# United States Court of Appeals
## For the First Circuit

No. 15-2232

TAYMARI DELGADO ECHEVARRÍA,

Plaintiff, Appellant,

v.

ASTRAZENECA PHARMACEUTICAL LP; ASTRAZENECA LP,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Thompson, Dyk,* and Kayatta,
Circuit Judges.

Vilma Maria Dapena Rodriguez for appellant.
Lourdes C. Hernández-Venegas, with whom Elizabeth Pérez-
Lleras and Schuster Aguiló LLC were on brief, for appellees.

May 2, 2017

---

* Of the Federal Circuit, sitting by designation.

**THOMPSON**, **Circuit Judge**.  The plaintiff, Taymari Delgado Ecvhevarría (Delgado), appeals from the entry of summary judgment in favor of her former employer, AstraZeneca Pharmaceutical LP (AstraZeneca).[1]  Although Delgado labors mightily to demonstrate the existence of a litany of genuine disputes of material fact, her inability to do so with respect to each of the essential elements of her claims compels us to affirm.

## BACKSTORY

Consistent with Delgado's effort to show the existence of a host of factual disputes in this case, each party's brief provides an in-depth discussion of the facts.  We prefer to take a different tack: briefly sketching here the general background and setting forth in detail only those facts that are relevant to our disposition of this appeal, augmenting this background as necessary in the pages that follow.  As in all other summary-judgment cases, we view the facts (and all reasonable inferences that can be drawn from them) in the light most favorable to Delgado, the nonmovant.  See Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 312 (1st Cir. 2016).

In 2001, AstraZeneca hired Delgado to work as a Pharmaceutical Sales Specialist (PSS).  She was promoted to a

---

[1] Delgado sued AstraZeneca Pharmaceutical LP and AstraZeneca LP.  Taking our cue from Delgado's complaint, we refer to both entities collectively as "AstraZeneca."

Hospital Specialist in 2009. With the new position came a new supervisor, Maribel Martínez (Martínez).

In November 2010, Delgado sought treatment for depression and anxiety with Dr. Jorge A. Sánchez Cruz (Sánchez), a psychiatrist. Nearly one year later, Delgado learned that she had a pituitary microadenoma (a small brain tumor, in layman's terms). Delgado informed Martínez of the tumor and the two biopsy procedures that flowed from this diagnosis, but did not disclose her depression or anxiety.

On December 12, 2011, Sánchez diagnosed Delgado with severe depression and extreme anxiety, and he recommended that she refrain from working. Later that day, Delgado emailed an AstraZeneca occupational health nurse in order to get the ball rolling on her application for benefits under the company's short-term disability (STD) policy.[2] Initially, AstraZeneca denied

_____

[2] A quick primer on that policy: It "provides full or partial income replacement for eligible employees during brief periods of disability," including "disability due to . . . mental illness," provided that the employee submits "the medical information necessary to substantiate the [benefits] claim" to the company's Corporate Health Services department (CHS). CHS is tasked with approving or disapproving a request for benefits and, in the event of approval, determining how long benefits will be paid. The policy also declares that "[t]he maximum period of time for which STD benefits are payable is 26 weeks for any single period of disability." After this 26-week window closes, the employee may be eligible for long-term disability (LTD) benefits or an "unpaid extended disability leave." However, CHS can terminate benefits prior to the expiration of the 26-week period where, among other scenarios, it determines that the employee is no longer disabled or the employee fails to submit the necessary supporting

Delgado's request for STD benefits because CHS determined that she had not submitted the necessary documentation. In response, Sánchez provided additional paperwork on Delgado's behalf in which he estimated that she needed to be out on leave for about five months until May 2012.

AstraZeneca subsequently awarded Delgado STD benefits (retroactive to December 12, 2011) until January 22, 2012.[3] The record does not reflect the reason that AstraZeneca did not grant Delgado STD benefits until May, as Sánchez requested. AstraZeneca periodically extended her benefits on several occasions. Delgado received treatment in a hospital on an outpatient basis sometime in late January or early February, and her benefits were extended until February 12. Delgado's benefits were then extended again until March 4, and once more until March 11.

In two treatment records that Sánchez submitted to AstraZeneca on Delgado's behalf — one dated February 22 and the other dated March 8 — Sánchez described Delgado as "[m]ildly [i]ll." On March 11, AstraZeneca terminated Delgado's STD benefits because she failed to submit what it viewed as adequate

---

documentation. The policy warns that, if "benefits are suspended or denied and the employee does not return to work, the employee may be considered to have abandoned the employee's job and be subject to immediate termination from employment."

[3] From here on out, all specified dates are from the year 2012 unless otherwise noted.

- 4 -

documentation of her disability. Five days later, Michael Cohran (Cohran), the then Senior Employment Practices Partner in the Human Resources department at AstraZeneca, sent a letter to Delgado instructing her to return to work by March 22 and informing her that, if she failed to do so, AstraZeneca would presume that she resigned from her employment with the company. In response, Sánchez requested that AstraZeneca continue Delgado's medical leave until March 30.

When Delgado did not return to work on March 22, Cohran called her, put pressure on her to resign, offered her a severance package, and suggested that, once she took care of her health, she reapply for her position with AstraZeneca in six months if her position was still open. The conversation was an upsetting one for Delgado; she became "pretty hysterical," began to cry, was unable to finish the call, and suffered a "relapse" of her condition as a result. One week after Cohran's phone call with Delgado, Sánchez submitted additional documentation in support of his request that AstraZeneca continue Delgado's medical leave; Sánchez characterized Delgado as "[s]everely [i]ll" in this paperwork. AstraZeneca then extended Delgado's STD benefits until April 29.

By letter dated May 7, AstraZeneca informed Delgado that her STD benefits terminated on April 30. Cohran sent another letter to Delgado on May 14 informing her that, if she did not

return to work on May 17, AstraZeneca would presume that she resigned from the company.

Delgado did not return to work on May 17. Instead, Sánchez faxed additional documentation to AstraZeneca on Delgado's behalf that day.[4] In one section of AstraZeneca's leave form, Sánchez related that Delgado's medical condition commenced in 2009 and would probably last "more than a year." In another section of the same form, Sánchez requested additional leave for Delgado and indicated that she was "unable to work at this time"; additionally, in response to a question on the form calling for an "estimate [of] the beginning and ending dates for the period of incapacity," Sánchez entered: "12 months."[5] An AstraZeneca occupational health

---

[4] We note that the record is not crystal clear on when Sánchez faxed this documentation to AstraZeneca. Although a form that Sánchez faxed to AstraZeneca is dated May 14 and Sánchez testified in his deposition that he "submitted [the form] on behalf of [Delgado] on May 14," Delgado states in her opening brief to this court that Sánchez sent the form to AstraZeneca "[o]n May 17." Additionally, as far as we can tell, the record does not reflect precisely when on May 17 Sánchez faxed this documentation to AstraZeneca. The closest we can come to pinpointing that time is to note that, at 2:07 p.m., an AstraZeneca occupational health nurse sent Cohran an email explaining that she had reviewed the form and determined that it did not support reinstating Delgado's benefits. Given the manner in which we resolve this appeal, we need not grapple with any uncertainty of when AstraZeneca received the documentation.

[5] Sánchez later testified at his deposition that this entry was meant to convey his estimate "that [it] would have been May 14, 2013, at a minimum, before . . . Delgado would be able to work" and that his "expectation was for her to . . . resolve her problems and be able to return to work in 12 months."

nurse told Cohran via email on May 17 that she reviewed this form the same day that it was faxed to the company, determined it did not support reinstating Delgado's STD benefits, and left Delgado a voicemail later that day. AstraZeneca did not follow up with Delgado's psychiatrist that day or at any point thereafter.

Rather, on May 18, Cohran sent Delgado yet another letter. This letter reiterated that Delgado had been required to return to work the day before or else "be presumed to have resigned [her] employment with AstraZeneca" and confirmed that she had neither reported to work as instructed nor contacted her supervisor. The letter indicated that Delgado's "termination effective date [was] July 19." The letter also noted another update; that, "due to a recent reorganization in field sales, we are making a non-negotiable offer of severance to you." Finally, on July 17, with no other communications passing between AstraZeneca and Delgado in the interim, Cohran sent Delgado one more letter that informed her: "As outlined in my letter dated May 18, 2012, due to a recent reorganization in field sales your position was eliminated . . . ." The July 17 letter also reminded Delgado of the effective date of her termination two days later and the severance-package offer.

Delgado did not accept AstraZeneca's offer. Instead, in February 2013, she initiated this action against her former employer, alleging a host of claims under federal and Puerto Rico

law.  In particular, Delgado alleged that AstraZeneca violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, by discriminating against her on account of her disability, failing to reasonably accommodate that disability, failing to engage in an interactive process to discuss reasonable accommodations, and retaliating against her for engaging in protected activity under the ADA.  Delgado also alleged that AstraZeneca violated several provisions of Puerto Rico law, including Law 44, Article 1802, and Law 80.[6]  The district court entered summary judgment in AstraZeneca's favor.  Delgado timely appealed.

## STANDARD OF REVIEW

We review the entry of summary judgment de novo.  Ortiz-Martínez v. Fresenius Health Partners, PR, LLC, No. 16-1453, 2017 WL 1291193, at *4 (1st Cir. Apr. 7, 2017); Garmon, 844 F.3d at 312.  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Ameen v. Amphenol Printed Circuits,

---

[6] Delgado also asserted claims of hostile-work environment, interference with and retaliation for requesting leave under the Family and Medical Leave Act (FMLA), see 29 U.S.C. §§ 2601-2654, age discrimination in violation of the Age Discrimination in Employment Act (ADEA), see id. §§ 621-634, and Puerto Rico's Law 100, as well as a claim for violation of Puerto Rico's Act No. 115.  Because Delgado either withdrew these claims at the district-court level or has not addressed the district court's entry of summary judgment on these claims in her briefing before this court, however, we need not discuss these claims or the facts giving rise to them.

Inc., 777 F.3d 63, 68 (1st Cir. 2015).  We are free to affirm the entry of summary judgment "on any basis apparent in the record." Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 86 (1st Cir. 2012) (quoting Chiang v. Verizon New Eng. Inc., 595 F.3d 26, 34 (1st Cir. 2010)).

**ANALYSIS**

On appeal, Delgado argues that the district court erred in entering summary judgment for AstraZeneca on both her ADA claims and Puerto Rico law claims.  We address her ADA claims first and then turn to her remaining claims.

**A.    ADA Claims**

Delgado's complaint asserted that AstraZeneca violated the ADA in several respects.  Those claims can be classified into one of two general categories:  disability discrimination and retaliation.  We address each category in turn.

**1.    ADA Disability-Discrimination Claim**

To withstand summary judgment on an ADA disability-discrimination claim, Delgado needs to show the existence of a genuine dispute of material fact as to all three elements of her prima facie case: (1) that she is disabled under the ADA; (2) that she "is qualified to perform the essential functions of [her] job with or without reasonable accommodation"; and (3) that she "was discharged or otherwise adversely affected in whole or in part because of [her] disability."  Jones, 696 F.3d at 87.  In this

- 9 -

case, the district court assumed, without deciding, that Delgado was disabled under the ADA on account of her depression and anxiety, and we do the same. Delgado and AstraZeneca spar over the remaining elements.

We narrow our focus to the qualified-individual element, which imposes a burden on Delgado to show: (1) "that she possesses the requisite skill, experience, education and other job-related requirements for the position"; and (2) "that she is able to perform the essential functions of the position with or without reasonable accommodation." Mulloy v. Acushnet Co., 460 F.3d 141, 147 (1st Cir. 2006). AstraZeneca does not dispute that Delgado satisfies this first requirement — her qualification for the position — and Delgado does not contend that she was able to perform the essential functions of her position without a reasonable accommodation.[7] Thus, the scope of our inquiry shrinks further still; we need only address whether Delgado has shown a genuine dispute of material fact that she was able to perform the essential functions of her position with a reasonable accommodation. See id.

The ADA compels an employer "to make 'reasonable accommodations to the known physical or mental limitations of an

---

[7] Indeed, she concedes in her reply brief that she "was unable to work at the time she was on leave, and at the time she requested an extension of her leave."

- 10 -

otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on [its] operation of the business.'" Ortiz-Martínez, 2017 WL 1291193, at *4 (quoting 42 U.S.C. § 12112(b)(5)(A)); see also U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 393 (2002) (explaining that the ADA "prohibits an employer from discriminating against an 'individual with a disability' who, with 'reasonable accommodation,' can perform the essential functions of the job" (quoting § 12112(a), (b))). The plaintiff bears the burden of showing the existence of a reasonable accommodation. See Reed v. LePage Bakeries, Inc., 244 F.3d 254, 258 (1st Cir. 2001). To satisfy that burden, "a plaintiff needs to show not only that [(1)] the proposed accommodation would enable her to perform the essential functions of her job, but also that, [(2)] at least on the face of things, it is feasible for the employer under the circumstances."[8] Id. at 259; see also Jones, 696 F.3d at 90; Freadman, 484 F.3d at 103; Mulloy, 460 F.3d at 148. We have referred to the second aspect of this burden as an obligation to show that the requested accommodation is "facially reasonable." Reed, 244 F.3d at 260.

---

[8] We have also recognized that "[a] plaintiff may sometimes be able to establish the reasonableness of a proposed accommodation by showing it is a method of accommodation that is feasible in the run of cases," although we also added that "this will not always be so." Reed, 244 F.3d at 259 n.5.

Delgado argues that her May 17 request for an additional twelve months of leave was a reasonable accommodation.[9] The district court thought otherwise, concluding that, in essence, Delgado was seeking indefinite leave — an accommodation that is not reasonable under the ADA.[10] See Fiumara v. President & Fellows of Harvard Coll., 327 F. App'x 212, 213 (1st Cir. 2009); Watkins v. J & S Oil Co., 164 F.3d 55, 62 (1st Cir. 1998); see also Robert v. Bd. of Cty. Comm'rs of Brown Cty., 691 F.3d 1211, 1218-19 (10th Cir. 2012). Having set the stage, we now provide our take.

First things first: All agree that a leave of absence or a leave extension can constitute a reasonable accommodation

---

[9] The record is unclear on whether Delgado was seeking paid or unpaid leave. At oral argument, Delgado's counsel suggested that her client was seeking paid leave, although she also seemed to suggest that Delgado had made payroll contributions to the source of the funds that would be used to pay for that leave. Given this lurking uncertainty about the true nature of the leave requested, we assume, favorably to Delgado, that she requested unpaid leave.

[10] As Delgado points out, the district court erroneously stated in its decision that Sánchez "asserted that the expected duration of [Delgado's] need for additional leave was for more than a year." Actually, Sánchez had indicated on the form he faxed to AstraZeneca that the "[p]robable duration of [Delgado's] condition" was "more than one year." (Emphasis added.) In a separate section of the form asking for an "estimate [of] the beginning and ending dates for the period of [Delgado's] incapacity," Sánchez wrote "12 months." (Emphasis added.) So, Sánchez did not indicate that Delgado needed additional leave for more than one year. But, as we view things, the district court's mistake is immaterial. Cf. Jones, 696 F.3d at 88 ("While we agree with Jones that several of the 'facts' stated in the district court's opinion are mistaken, none of those facts is material to our analysis.").

under the ADA "in some circumstances."  García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647 (1st Cir. 2000); see also Criado v. IBM Corp., 145 F.3d 437, 443 (1st Cir. 1998).  And, to be sure, "[w]hether [a] leave request is reasonable turns on the facts of the case."  García-Ayala, 212 F.3d at 647 (alterations in original) (quoting Criado, 145 F.3d at 443).  But the fact-intensive nature of the reasonable-accommodation inquiry does not insulate disability-discrimination cases from summary judgment.  To the contrary, a plaintiff must show, even at the summary-judgment stage, that the requested accommodation is facially reasonable.  See Reed, 244 F.3d at 259-60.  And, where a plaintiff fails to show facial reasonableness, summary judgment for the defendant is appropriate.  See, e.g., Jones, 696 F.3d at 91.  So it is here.

The combined effect of two aspects of this case convince us that Delgado has failed to show that her request for twelve more months of leave was a reasonable accommodation.  First, it seems doubtful that Delgado shouldered her burden of showing that the requested accommodation would have enabled her to perform the essential functions of her position.  Second, Delgado has not shown that additional leave for this duration is a facially reasonable accommodation, either in the circumstances of her particular case, Reed, 244 F.3d at 259, or "in the run of cases," id. at 259 n.5.

On appeal, Delgado disputes both of these conclusions, but to no avail.

### a.    Effectiveness of Accommodation

Delgado seems to assert that Sánchez informed AstraZeneca that the requested additional twelve months "would have improved [Delgado's] condition and [that] she would have been able to return to work."[11]  Upon closer inspection, however, this claim is dubious.

For starters, Delgado relies, at least in part, on Sánchez's deposition testimony to support her assertion.  This is problematic.  Even if Sánchez opined during his deposition in 2014 that Delgado would have been able to return to work after twelve more months of leave, "[t]he facts relevant to a determination of whether a medical leave is a reasonable accommodation are the facts

---

[11] Relatedly, Delgado's brief appears to suggest that the request for twelve additional months of leave was reasonable simply because Sánchez specified this number and his past treatment of Delgado "was effective."  This suggestion (to the extent Delgado intended to make it) is a nonstarter.  As we explained in Reed, an employee cannot establish the reasonableness of the requested accommodation simply by showing that the accommodation will be effective (i.e., that it will allow the employee to perform the essential functions of her position); instead, a plaintiff must also show that the accommodation is facially reasonable.  See 244 F.3d at 259-60 (rejecting EEOC's argument that "the only burden a plaintiff has on proving reasonable accommodation is to show that the accommodation would effectively enable her to perform her job" because "proving an accommodation's effectiveness is part of the plaintiff's burden[,] but it is not the whole" and adopting instead a two-pronged burden requiring plaintiff to show both an accommodation's effectiveness and its facial reasonableness).

available to the decision-maker at the time of the employment decision." Amadio v. Ford Motor Co., 238 F.3d 919, 928 (7th Cir. 2001); cf. Jones, 696 F.3d at 90-91 (explaining that "'[o]ne element in the reasonableness equation is the likelihood of success'" and concluding that employee failed to show that requested accommodation — an extension of time to take a test — was reasonable because he "did not show any reason for the employer to conclude he would pass the exam if given yet another opportunity to take it" (quoting Evans v. Fed. Express Corp., 133 F.3d 137, 140 (1st Cir. 1998))); Henry v. United Bank, 686 F.3d 50, 60 (1st Cir. 2012) (affirming entry of summary judgment on failure-to-accommodate claim brought under analogous state law because, "as of the date of her termination, the plaintiff . . . had given the bank neither a relative time frame for her anticipated recovery nor any indication of when or whether she would ever be able to return to her credit analyst position in the future").  With one possible exception discussed below, Delgado has pointed us to no evidence in this record suggesting that Sánchez communicated his one-year-to-recover opinion to AstraZeneca in 2012, "[a]nd we will not become archeologists, devoting scarce judge-time to dig through the record in the hopes of finding something [Delgado] should have found."  Belsito Commc'ns, Inc. v. Decker, 845 F.3d 13, 22 (1st Cir. 2016).

The closest thing in this record to evidence that Sánchez informed AstraZeneca that the requested twelve additional months of leave would likely enable Delgado to return to work appears to be an entry in the form Sánchez faxed to AstraZeneca on May 17. Delgado seizes upon this entry, but it's hardly the golden ticket that she thinks it is.

In the space on the form calling for an "estimate [of] the beginning and ending dates for the period of incapacity," Sánchez wrote: "12 months." That's all. As far as we can tell, Delgado evidently believes that, because (1) the form calls for an estimate of the ending date of the period of incapacity and (2) Sánchez wrote twelve months in response, (3) the implication is that, after the twelve months elapsed, Delgado would be ready to return to work.

Although we are duty-bound at this juncture to view the facts in the light most favorable to Delgado and to draw all the reasonable inferences that can be drawn from those facts in her favor, we are leery to conclude that the form could be reasonably understood to have conveyed to AstraZeneca that the proposed accommodation of an additional twelve months of leave would allow Delgado to return to work able to perform the essential functions of her position. Read literally, this single entry on the form says no such thing. But, even if we accepted Delgado's argument that Sánchez impliedly suggested by this entry that Delgado would

return to work after twelve additional months of leave and that AstraZeneca should have understood as much by reading between the lines, Delgado has not told us whether Sánchez submitted any supporting medical documentation when he faxed the form to AstraZeneca — let alone that any such documentation supported what Delgado views as Sánchez's implicit assertion that she would have been able to return to work after twelve more months of leave.[12] This barren record strikes us as a rather meager attempt, in the circumstances of this case, to demonstrate that the requested accommodation would have been effective. Nonetheless, given our obligation to view the evidence in the light most favorable to Delgado, we assume that she has met her burden on this score.

### b.  Facial Reasonableness

There is an even larger flaw in Delgado's case:  She has failed to show that her proposed accommodation of an additional twelve months — a lengthy period — of leave is a facially

---

[12] We note that, in addition to the form that Sánchez signed on May 14 and faxed to AstraZeneca on May 17, Delgado submitted two pages of Sánchez's treatment records, dated May 10, as a separate exhibit to support her opposition to AstraZeneca's motion for summary judgment.  It is not clear whether these records accompanied the form that Sánchez faxed to AstraZeneca.  Even if they did, however, we see nothing in these two pages of medical records that contains any suggestion that Delgado would be able to return to work in twelve months' time. The AstraZeneca occupational health nurse who reviewed whatever documents Sánchez faxed to AstraZeneca concluded that the documentation did not support reinstatement of Delgado's STD benefits, and Delgado has not pointed us to anything specific in the record to rebut that assessment.

reasonable accommodation.  For starters, the sheer length of the delay, when coupled with her prior five-month leave from December 2011 to May 2012, jumps off the page.  Courts confronted with similar requests — even ones for half the amount of time that Delgado requested — have concluded that such requests are not facially reasonable.  See, e.g., Hwang v. Kan. State Univ., 753 F.3d 1159, 1162-63 (10th Cir. 2014) (Gorsuch, J.); see also Luke v. Bd. of Trustees of Fla. A & M Univ., No. 15-13995, 2016 WL 7404677, at *3 (11th Cir. Dec. 22, 2016) (holding that request for additional leave, after employee had already received nine months of leave, was unreasonable-accommodation request where employee would remain unable to perform essential function for another six months); Stallings v. Detroit Pub. Schs., 658 F. App'x 221, 226-27 (6th Cir. 2016) (holding that teacher's request for four months' leave was not a reasonable accommodation); Epps v. City of Pine Lawn, 353 F.3d 588, 593 n.5 (8th Cir. 2003) (concluding that employee failed to show that requested accommodation of six months of leave was reasonable); cf. Larson v. United Nat. Foods W., Inc., 518 F. App'x 589, 591 (9th Cir. 2013) ("[A]n indefinite, but at least six-month long, leave of absence to permit [the employee] to fulfill the [substance-abuse professional's] treatment recommendations so that he might eventually be physically qualified under the DOT regulations is not a reasonable accommodation."); Byrne v. Avon Prods., Inc., 328 F.3d 379, 380-

- 18 -

81 (7th Cir. 2003) (suggesting that two months employee spent away from work for treatment for mental difficulties would not qualify as reasonable accommodation because "[i]nability to work for a multi-month period removes a person from the class protected by the ADA").

Our newest judicial superior, Justice Gorsuch, then writing for the Tenth Circuit in Hwang, nicely captured the dilemma that lengthy leave requests pose for employers:

> By her own admission, [the plaintiff] couldn't work at any point or in any manner for a period spanning more than six months. It perhaps goes without saying that an employee who isn't capable of working for so long isn't an employee capable of performing a job's essential functions — and that requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation. After all, reasonable accommodations — typically things like adding ramps or allowing more flexible working hours — are all about enabling employees to work, not to not work.
>
> . . . .
>
> . . . [I]t's difficult to conceive how an employee's absence for six months — an absence in which she could not work from home, part-time, or in any way in any place — could be consistent with discharging the essential functions of most any job in the national economy today. Even if it were, it is difficult to conceive when requiring so much latitude from an employer might qualify as a reasonable accommodation.

753 F.3d at 1161-62 (internal citations omitted).[13] Compliance with a request for a lengthy period of leave imposes obvious burdens on an employer, not the least of which entails somehow covering the absent employee's job responsibilities during the employee's extended leave. Delgado's facial-reasonableness showing must take these obvious burdens into account. See Reed, 244 F.3d at 259-60 ("[T]he difficulty of providing plaintiff's proposed accommodation will often be relevant . . . to the reasonableness of the accommodation . . . . Plaintiff will often need to take such difficulties into account in proving whether the accommodation is facially practicable . . . .").[14] She has not done so.

In an attempt to show that her requested accommodation was facially reasonable, Delgado points out that, under AstraZeneca's leave policy, employees are entitled to exhaust 26 weeks of STD leave and then also to receive LTD benefits after

_____

[13] Hwang was a Rehabilitation Act case, not an ADA case. See 753 F.3d at 1161. This matters not at all, however, because "[t]he same standards . . . apply to [failure-to-accommodate] claims under the ADA and under the Rehabilitation Act." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 11 n.1 (1st Cir. 2004).

[14] Importantly, this does not mean that a plaintiff must show the absence of an undue hardship. The burden to show undue hardship always remains with the employer. Reed, 244 F.3d at 258. But "where[, as here,] the costs of an accommodation are relatively obvious — where they really are what they appear to be on the face of things — plaintiff's burden and defendant's burden may in application be quite similar, even to the extent of being mirror images." Id. at 260.

- 20 -

that.  This is true as far as it goes, but it doesn't take Delgado very far.  After all, employees are entitled to benefits only if they have sufficiently documented the need for them to the satisfaction of CHS.  AstraZeneca determined that Delgado's May 17 request for leave was not adequately supported by the provided documentation, and Delgado did not challenge that determination through the internal, company appeals procedure outlined in AstraZeneca's STD policy.[15]  So, notwithstanding the theoretical availability of benefits under AstraZeneca's policy, Delgado has not shown that, "under the circumstances" of this case, Reed, 244 F.3d at 259, her request for an additional twelve months of leave was facially reasonable.

Undaunted, Delgado claims that our decision in García-Ayala supports the reasonableness of her request for extended STD leave.  She is mistaken.  As an initial matter, Delgado misapprehends the precise accommodation request at issue in García-Ayala.  Contrary to her assertion that we held that a

_____

[15] We note that each written notice that AstraZeneca sent Delgado explaining that her STD benefits had been terminated clearly informed her of the company's appeals process.  For example, the May 7 letter informed Delgado that, "[i]f you disagree with this decision, you may file an appeal with the Administrator of the STD policy . . . or AstraZeneca STD Administrative Committee," and provided her with contact information for those entities.  There is nothing in the record to suggest that Delgado ever utilized this appeals procedure.  Similarly, the record does not reflect whether Delgado ever pressed an ERISA claim for benefits under either the STD or LTD plans; she presses no such claim in the case before us.

"request for leave up to 17 months did not constitute an undue burden," the only leave request at issue in that case was the plaintiff's request for an additional two months of leave from the date of the request. García-Ayala, 212 F.3d at 647.[16] We reversed the entry of summary judgment for the employer in that case because the district court improperly "applied per se rules — rather than an individualized assessment of the facts." Id. at 647. And the employee had demonstrated, in the circumstances of that case, that "the requested accommodation of a few additional months of unsalaried leave, with the job functions being satisfactorily performed in the meantime, [was] reasonable." Id. at 649. She pointed to evidence that showed that the employer was able to fill the employee's "position with individuals hired from temporary agencies" and "had no business need . . . to replace [the employee] with an in-house hire, and hence would not have suffered had it waited for several more months until [the employee's] return." Id. at 648. Moreover, "the employer did not contest the reasonableness of the accommodation except to embrace a per se

---

[16] In her reply brief, Delgado asserts that the leave request was for five additional months. But this assertion, too, is incorrect. We plainly stated in García-Ayala that "the leave that García requested on June 10 was for less than two months." 212 F.3d at 647. We then noted that "[t]he district court viewed the request as being for five months" and explained in dictum that, "[e]ven if the request were for an additional five months of unpaid leave," the result would not change. Id.

rule that any leave beyond its one-year reservation period was too long." Id. at 649.

In this case, Delgado's request for twelve months of leave — on top of the five months already taken — is very different. Our holding in García-Ayala was driven by the particular facts of that case. See id. at 650 ("We add that our analysis, while applicable to these facts, may not be applicable in other cases."). Indeed, we acknowledged that, "on different facts, a request for an extended leave could indeed be too long to be a reasonable accommodation and no reasonable factfinder could conclude otherwise." Id. at 649. This coda seems tailor-made for this case, where Delgado's leave request was for a far lengthier period of time, and her attempt to overcome the relatively obvious burdens associated with such a leave request is woefully deficient. In these circumstances, Delgado has failed to shoulder her burden of showing facial reasonableness, and no reasonable factfinder could conclude that Delgado's leave request was reasonable.

Finally, Delgado points out that AstraZeneca has failed to offer any evidence or argument that her request for an additional twelve months of leave would have imposed an undue hardship on it.[17] But this is beside the point here. Because

_____

[17] In a single sentence in connection with this argument, Delgado stated that an AstraZeneca employee testified during a deposition "that the accounts of plaintiff's new assigned territory were already being visited by other [Pharmaceutical

- 23 -

Delgado failed to shoulder her burden to identify a reasonable accommodation, we need not consider the question of undue hardship. See Mulloy, 460 F.3d at 154 n.7.

We add that, as was true in García-Ayala, our conclusion today is a narrow one. Although we have previously suggested that "there may be requested leaves so lengthy or open-ended as to be an unreasonable accommodation in any situation," García-Ayala, 212 F.3d at 648, we need not — and therefore do not — decide that a request for a similarly lengthy period of leave will be an unreasonable accommodation in every case. It suffices to say that, in these circumstances, Delgado failed to shoulder her burden of showing that a request for twelve more months of leave was facially reasonable.

There is one loose end to tie up. Delgado also contends that AstraZeneca violated the ADA when it failed to engage in an interactive process after she requested the additional twelve months of leave.[18] And, true enough, "[a]n employee's request for

_____

Sales Specialists]." To the extent that Delgado intended this one-line observation to be part of her effort to show that the requested accommodation was facially reasonable in these circumstances (as opposed to part of her misguided effort to criticize AstraZeneca for its failure to put forth evidence of undue hardship), it is far too undeveloped to warrant our consideration. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (warning litigants that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

[18] Delgado also raises a procedural objection to the district court's consideration of this claim in the first place. Because

accommodation sometimes creates a duty on the part of the employer to engage in an interactive process," Ortiz-Martínez, 2017 WL 1291193, at *4 (internal quotation marks omitted) (quoting EEOC v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 132 (1st Cir. 2014)), though the specifics of what process is required "var[y] depending on the circumstances of each case," id. But Delgado's contention need not detain us long. Where, as here, the employee fails to satisfy her burden of showing that a reasonable accommodation existed, the employee cannot maintain a claim for failure to engage in an interactive process. See Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 456 (1st Cir. 2016) ("[T]he 'omission' of an interactive process 'is of no moment if the record forecloses a

---

AstraZeneca failed to address this claim in its initial memorandum in support of its motion for summary judgment, Delgado protests, the district court should not have considered its argument — raised for the first time in its reply — that it was entitled to summary judgment on this claim. Although it's true that courts routinely preclude a litigant from raising new arguments in a reply brief, this rule is not inflexible; courts retain discretion to excuse parties from procedural gaffes such as this. Cf. United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) (recognizing that "courts may excuse waivers and disregard stipulations where justice so requires"). And we discern no abuse of discretion here. Delgado's complaint set forth seven separately titled causes of action, and failure to engage in an interactive process was not one of them. Instead, that claim comprised two paragraphs within her first cause of action, which she labeled "ADA and Law No. 44 (Disability Discrimination - Wrongful Termination & Failure to Accommodate)." In these circumstances, the district court was not obligated to deem AstraZeneca's initial oversight inexcusable. Moreover, Delgado was permitted to file a sur-reply in which she both asked the district court to refuse to consider AstraZeneca's new argument and attacked the merits of that argument.

finding' that the employee could do the essential 'duties of the job, with or without reasonable accommodation,' — which, for reasons already given, is the case here." (citation omitted) (quoting Kvorjak v. Maine, 259 F.3d 48, 53 (1st Cir. 2001))). So we say no more about this claim.

That's that for Delgado's ADA disability-discrimination claim. Because Delgado failed to argue that she was able to perform the essential functions of her position without accommodation and failed to show that her requested accommodation of twelve more months of leave is facially reasonable, she is unable to establish a genuine dispute of material fact as to the qualified-individual element of her prima facie case. See Mulloy, 460 F.3d at 154. Therefore, AstraZeneca was entitled to summary judgment on Delgado's ADA disability-discrimination claim.

### 2. ADA Retaliation Claim

In addition to her ADA disability-discrimination claim, Delgado also asserts that AstraZeneca violated the ADA by retaliating against her because she engaged in protected activity. It is well settled that "[a]n ADA plaintiff may assert a claim for retaliation even if she fails to succeed on a disability[-discrimination] claim." Freadman, 484 F.3d at 106.

Because Delgado's retaliation claim is premised on circumstantial evidence, the familiar burden-shifting analysis applies. See Collazo-Rosado v. Univ. of P.R., 765 F.3d 86, 92

- 26 -

(1st Cir. 2014).  To establish a prima facie case of retaliation under the ADA, "a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action."  Freadman, 484 F.3d at 106.  If Delgado succeeds in making this prima facie showing, the burden then shifts to AstraZeneca "to offer a legitimate, nonretaliatory reason for [its] actions."  Collazo-Rosado, 765 F.3d at 92.  If AstraZeneca meets its burden, the burden shifts back to Delgado "to show that the [articulated] reason was mere pretext."  Id.  Delgado "bears the ultimate burden to create a plausible inference that the employer had a retaliatory motive."  Carreras v. Sajo, García & Partners, 596 F.3d 25, 36 (1st Cir. 2010).  And, as we have repeatedly explained, "[e]ven in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  Ameen, 777 F.3d at 68 (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)); see also Vega-Colón v. Wyeth Pharms., 625 F.3d 22, 31 (1st Cir. 2010).

Delgado claims on appeal (as she did below) that her May 17 request for an additional twelve months of leave was protected

activity.[19]  The district court accepted (and AstraZeneca did not contest) Delgado's position that this leave request constituted protected activity, but it concluded that Delgado failed to establish a causal connection between the request for leave and the adverse employment action (Delgado's termination).  In the district court's view, Delgado was terminated on May 14 when Cohran sent a letter to Delgado instructing her to return to work three days later or else be presumed to have resigned from her employment.  Because the May 17 additional-leave request postdated Delgado's termination, the court reasoned, Delgado could not establish the causal-connection element of her prima facie case.  On appeal, the parties stake out competing positions in favor of and against the district court's conclusion.

We need not enter this fray, however.  Instead, we assume without deciding that Delgado established her prima facie case of retaliation.  See, e.g., Collazo-Rosado, 765 F.3d at 93 (employing similar approach); Carreras, 596 F.3d at 36 (same).  And we readily conclude that AstraZeneca has met its burden of offering a legitimate, nondiscriminatory reason for Delgado's termination.  In fact, it offers two such reasons:  "that Delgado was terminated

_____

[19] In addition to the leave request, Delgado identified below other activity — namely, an internal complaint of discrimination that she lodged with AstraZeneca on December 12, 2011 — that served as a basis of her retaliation claim.  Because Delgado eschews any reliance on this activity on appeal, we need not consider it.

after her . . . position was eliminated and [that] she went on STD leave from which she did not return once it expired." AstraZeneca repeatedly informed Delgado that she would be presumed to have resigned from her employment with AstraZeneca if she failed to return to work after her STD benefits were terminated, and yet she failed to return to work as instructed on May 17. Further, as explained below, the deposition testimony of Cohran, Martínez, and Elsa Saavedra (Saavedra), another AstraZeneca supervisor, supports the notion that Delgado's territory and position were eliminated in reorganizations.

Therefore, we now consider whether Delgado can shoulder her ultimate burden of demonstrating that these articulated justifications were pretextual. "To establish pretext she must show that the explanation[s] [were] . . . lie[s], which would let a factfinder infer that [AstraZeneca] made the story up to cover [its] tracks." Collazo-Rosado, 765 F.3d at 92. Delgado makes several attempts to show pretext, but none persuades.

Delgado first claims that the reasons given by AstraZeneca for her termination — "elimination of position, failure to return to work, and resignation" — are inconsistent. We disagree. For starters, we see no inconsistency between the failure-to-return justification and the resignation justification on these facts. The May 14 letter from Cohran to Delgado warned: "[I]f you do not return to work by Thursday, May 17, 2012[,] you

- 29 -

will be <u>presumed to have resigned</u> your employment with AstraZeneca."[20] (Emphasis added.) Similarly, Cohran's May 18 letter reminded Delgado: "[Y]ou were to have returned to work by Thursday, May 17, 2012 or you would be presumed to have resigned your employment with AstraZeneca." Thus, the letters, using language similar to that contained in the STD policy, equated Delgado's failure to return to work with her presumed resignation. Therefore, the fact that Martínez, who filled out AstraZeneca's Termination Details form for Delgado, entered that Delgado's resignation notice was turned in on May 18 is unremarkable; by not showing up to work on May 17 as instructed, she was presumed to have resigned under the terms of the May 14 letter.[21]

Nor do we agree that AstraZeneca's other stated justification for terminating Delgado — that her position was

---

[20] We note that this was not the first time that Delgado was informed of the consequence of her failure to return to work after the termination of her STD benefits. She received a similar notification two months earlier.

[21] Delgado also notes that Martínez entered "S06," which evidently is short for "Separation 6 mo[nths]," on the form and that Martínez did not know what this entry on the form meant. But this minor inconsistency or mere inaccuracy does not show any broader inconsistency between the failure-to-return and resignation justifications. Cf. Carreras, 596 F.3d at 37 ("The minor inconsistencies cited by Carreras, however, do not undermine SGP's contention that his work performance was unsatisfactory. The slight differences in SGP's accounts of the timing of the decision or the reason for the short delay before its implementation do not permit a reasonable factfinder to infer that SGP did not fire Carreras because of his poor work performance.").

eliminated in a reorganization — is inconsistent with the failure-to-return-to-work justification. To be sure, "an employee can establish pretext 'by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.'" Carreras, 596 F.3d at 37 (emphasis omitted) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000)); see also Collazo-Rosado, 765 F.3d at 93. But Delgado has failed to do so here.

The May 18 termination letter first recounted the consequences of Delgado's failure to return to work. It then stated: "However, due to a recent reorganization in field sales, we are making a non-negotiable offer of severance to you." This reorganization was also referenced in the July 17 letter, which provided: "As outlined in my letter dated May 18, 2012, due to a recent reorganization in field sales your position was eliminated and you were made an offer for a non-negotiable severance." Although the elimination of her position was not referenced in the May 18 letter, these two letters were consistent in the reference to a reorganization in field sales and the resultant severance offer. See Collazo-Rosado, 765 F.3d at 94. And Delgado has not given us any basis to conclude that each termination letter "had to give every reason [AstraZeneca] had for" terminating her. Id.

- 31 -

at 93. There is simply nothing contradictory, incoherent, implausible, or inconsistent in these two different legitimate, nondiscriminatory reasons for her termination; "[a]t the very least[,] the rationales are not so inconsistent as to be 'unworthy of credence,' which is the test." Id. at 94 (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998)).

For similar reasons, we reject Delgado's argument that AstraZeneca has, at various points in this litigation, offered inconsistent justifications for her termination. In support of this contention, Delgado notes that AstraZeneca (1) relied on its elimination-of-position justification in its answer to Delgado's complaint, its representations in the joint case-management memorandum, and its answers to interrogatories, (2) relied on its failure-to-return justification in its motion for summary judgment, and (3) relied on both justifications in its appellate brief. But because, for reasons already explained, we perceive no inconsistency between these two justifications, we fail to see how AstraZeneca's reliance on one or the other in various documents through the course of this litigation renders these "rationales . . . so inconsistent as to be 'unworthy of credence.'" Id. (quoting Hodgens, 144 F.3d at 168).

Delgado's second pretext argument is grounded in AstraZeneca policy. Starting from the rock-solid premise that an employer's inadequately explained material deviation from standard

- 32 -

procedure can establish a genuine dispute of material fact as to whether the employer's stated justifications are pretextual, see Acevedo-Parilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 142-43 (1st Cir. 2012), Delgado identifies two instances of AstraZeneca's failure to follow its applicable STD policy: (1) that Delgado was not placed in an unpaid extended disability leave, an option under AstraZeneca's STD policy when an employee exhausts his or her STD benefits and is still unable to return to work; (2) Cohran's unauthorized selection of a return-to-work date, a task reserved for the CHS case manager, in consultation with an employee's treating physician after the physician approves the employee's return to work. We are unpersuaded.

The provision relating to LTD benefits and unpaid extended disability leave is contained in a section entitled "Employment Status After Exhausting STD Benefits." Consistent with this title, this section applies only to "[a]n employee who is unable to return to work due to continuing disability after exhausting" the full 26 weeks of available STD benefits. (Emphasis added.) Delgado did not exhaust her benefits, however. Instead, CHS terminated them after invoking its right under a separate section of the policy to terminate benefits when it determines that the employee is no longer totally disabled or the employee failed to submit adequate supporting documentation, and Delgado did not challenge the termination of her benefits through the

appeals procedure set forth in the policy and communicated to her in the benefits-termination letter.

Delgado's attempt to show pretext through Cohran's selection of her return-to-work date fares no better because AstraZeneca's STD policy is not as clear-cut as Delgado believes. Although the policy contains a section (section 8) outlining the return-to-work procedure and specifying that "[p]rior to returning to work, the employee must submit to the CHS case manager a completed [health-care physician s]tatement," the policy also provides in a separate section (section 5.4) that, "[i]f STD benefits are suspended or denied and the employee does not return to work, the employee may be considered to have abandoned the employee's job and be subject to immediate termination from employment." The policy is not clear on the need for a completed health-care physician statement and the applicability of section 8 where, as here, AstraZeneca suspends an employee's benefits under section 5.4 even when the employee's health-care physician requests that the employee remain out of work.[22]

Delgado's position — that, even in this scenario, a return-to-work date cannot be established absent "a statement from [the employee's] doctor that [the employee] is safely able to

_____

[22] In his deposition, Cohran acknowledged the policy's silence on this issue, but testified that, in this scenario, a return-to-work statement from the physician is not required.

return to work" — would allow a recalcitrant health-care physician to remain steadfast in his or her opposition to AstraZeneca's benefits denial or termination, refuse to authorize the employee's return to work, and thereby singlehandedly render section 5.4 a nullity. We need not decide whether Delgado's interpretation of the policy language is erroneous; it suffices that, because it is not clear that Cohran's selection of the return-to-work date actually violated the policy in these circumstances, it does not create a genuine dispute of material fact as to whether AstraZeneca's stated justifications for firing Delgado were pretextual.

Delgado's third pretext argument asserts that AstraZeneca's stated justification that her position had been eliminated as part of the reorganization "is completely false." Relying on deposition testimony of Martínez and Saavedra, Delgado insists that the reorganization eliminated her territory but not her position. This false justification, Delgado argues, shows that AstraZeneca's justifications are pretextual. This argument rests on a flawed starting premise.

Although Martínez and Saavedra did indeed discuss a reorganization involving the elimination of Delgado's territory, Cohran discussed a second, separate reorganization in his deposition. According to Cohran, in this second reorganization, the floating position to which Delgado had been assigned as a

result of the elimination of her territory in the first reorganization was itself eliminated. Although AstraZeneca noted this aspect of Cohran's testimony in its brief to this court, Delgado failed to effectively address this testimony in either her opening or reply brief, and — we say it again — it is not our responsibility to dig through the record in the hopes of unearthing some nugget that creates a genuine dispute of material fact. See Belsito Commc'ns, 845 F.3d at 22. Therefore, given Delgado's failure to address Cohran's deposition testimony that her position was eliminated in a second reorganization, it effectively stands unrebutted on appeal and compels us to reject Delgado's assertion that AstraZeneca's reorganization justification "is completely false."[23]

---

[23] Delgado also scatters complaints in her brief to the effect that the district court failed to consider the evidence of her "stellar performance history" with AstraZeneca from 2001 until late 2011. True, Delgado provided a detailed chronicle of her positive work history in the statement of facts that she submitted to the district court. And, to be sure, our cases indicate that positive performance evaluations can be relevant to the pretext inquiry, at least where poor performance is one of the justifications that the employer puts forward for the adverse-employment action. See Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 52-53 (1st Cir. 2010) (considering evidence of employee's positive work evaluations and concluding that genuine issue of material fact existed as to whether performance-problems justification was pretextual); cf. Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 62 (1st Cir. 2005) (affirming district court's admission of employee's positive performance evaluations to show that employee possessed necessary qualifications and adequately performed job and to rebut employer's assertion that employee lacked relevant knowledge to perform job). But, unlike in Collazo, AstraZeneca has not sought

That leaves Delgado's argument about the temporal proximity between the May 17 request for twelve more months of leave and the May 18 termination letter. Although such close temporal proximity "may suffice for a prima facie case of retaliation," it "does not[, standing alone,] satisfy [Delgado's] ultimate burden to establish that the true explanation for [her] firing was retaliation for engaging in protected conduct rather than" the reasons articulated by AstraZeneca. Carreras, 596 F.3d at 38. And we reiterate that, although the pretext inquiry entails consideration of "elusive concepts," Ameen, 777 F.3d at 68, summary judgment may still be appropriate on that issue, see, e.g., Collazo-Rosado, 765 F.3d at 94-95.

And it is in this case: Delgado cannot shoulder her ultimate burden of showing pretext, and the district court therefore properly granted summary judgment to AstraZeneca on Delgado's ADA retaliation claim.

### B. Remaining Claims

Now that we've addressed Delgado's ADA claims, we finally turn briefly to her claims sounding in Puerto Rico law.

---

to justify its termination of Delgado on the ground that her performance was deficient. Instead, it has asserted that Delgado violated AstraZeneca policy by failing to report to work once her STD benefits were terminated and that her position had been eventually eliminated in a reorganization. And Delgado has not shown us why her positive work history in any way impacts those justifications.

She asserts claims under three Puerto Rico statutes: Law 44, Article 1802, and Law 80. We address each claim in turn.

### 1. Law 44

We can make quick work of the first of these claims: As Delgado appropriately concedes, "Law 44 and the ADA are coterminous." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 87 (1st Cir. 2008). Therefore, because we affirm the district court's entry of summary judgment on Delgado's ADA disability-discrimination claim, we affirm the entry of summary judgment on her Law 44 claim for the same reasons. See id.

### 2. Article 1802

We next examine Delgado's Article 1802 claims. As we read her complaint, she asserts two Article 1802 claims, one for negligence and the other for tortious infliction of emotional distress. We easily affirm the district court's entry of summary judgment on Delgado's claim that AstraZeneca (in Delgado's words) "was negligent by not adhering to the requirements of Law 44 and the ADA in accommodating the plaintiff in accordance with her doctor's certifications." Even assuming that such a claim is cognizable under Article 1802 — and we express no opinion on this issue — Delgado's failure to prevail on her ADA and Law 44 claims dooms her negligence claim premised on AstraZeneca's violation of those statutes.

With respect to Delgado's Article 1802 infliction-of-emotional-distress claim, the district court entered summary judgment in favor of AstraZeneca because the conduct underlying that claim was the same conduct that was "arguably covered by the ADA, Law 44, and the FMLA" and, "to the extent a specific labor or employment statute covers the conduct for which a plaintiff seeks damages, she is barred from using the same conduct to also bring a claim for damages under Article 1802."

In challenging the district court's entry of summary judgment on appeal, Delgado's argument is not a model of clarity. Indeed, it is tough for us to discern precisely what she is arguing, but we'll do the best we can. The main thrust of her argument seems to be that she alleged "specific conduct that supports her tort action independent from her other claims."

But Delgado has not told us what that specific other conduct is or explained how it is independent from the conduct giving rise to her other claims. According to the complaint, the conduct giving rise to her Article 1802 claim consisted of "various negative actions" on the part of AstraZeneca "[a]fter plaintiff disclosed her diagnosis to her supervisor," including "constant pressures to return to work while on a valid leave," "threats of termination," "ignor[ing] [her] doctor's recommendations," and continued harassment. No real specifics were provided. Similarly, in her briefing both below and on appeal, Delgado makes vague

- 39 -

references to "Cohran's undue and unreasonable interference with [Delgado's] treatment" and "Cohran's negligent and reckless intervention" without explaining how this conduct is independent from that giving rise to her other claims. She simply has not pointed to any record support for her assertion that her Article 1802 claim is premised on independent conduct, and we reject it for that reason.

All that remains of Delgado's Article 1802 arguments on appeal is the following cryptic assertion: "It is well settled that to the extent that the facts that comprise the actions executed against the plaintiff are not covered by the employment statutes, Article 1802 must provide." The meaning of this sentence is not readily apparent. In support of this assertion, Delgado cited Rios v. Municipality of Guaynabo, 938 F. Supp. 2d 235, 260 (D.P.R. 2013). We suspect that Delgado might have intended her cryptically phrased sentence and citation to Rios to constitute an argument that, if AstraZeneca's conduct is not covered by the various employment and discrimination statutes undergirding her other claims (by virtue of the district court's entry of summary judgment on those claims), then her Article 1802 claims necessarily survive. See id. (declining to enter summary judgment on Article 1802 and 1803 claims premised on the same conduct that gave rise to the retaliation claims for which summary judgment entered for

defendants because "such potentially tortious claims are no longer covered by any specific labor law").

The problem for Delgado, however, is that "[j]udges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." Zannino, 895 F.2d at 17 (internal quotation marks omitted) (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)); see also Town of Norwood v. Fed. Energy Regulatory Comm'n, 202 F.3d 392, 405 (1st Cir. 2000) ("[D]eveloping a sustained argument out of . . . legal precedents is the job of the appellant, not the reviewing court, as we have previously warned."). Delgado has failed to do her part with respect to this Article 1802 argument. The combination of a single, confusing sentence and an unexplained citation to a case that offers an unsupported and unauthoritative view of the scope of Article 1802 is no substitute for developed argumentation. See Zannino, 895 F.2d at 17 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); see also United States v. Bulger, 816 F.3d 137, 148 (1st Cir. 2016) (explaining that "'we consider waived arguments confusingly constructed and lacking in coherence'" and declining to consider argument where litigant "fail[ed] to provide us with intelligible analysis, or case law, to support his claim" (internal quotation marks omitted) (quoting Rodríguez v.

Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011))).[24]
Therefore, we decline to consider this undeveloped argument.

Because Delgado has not presented us with a developed, coherent, and convincing argument for overturning the district court's entry of summary judgment in AstraZeneca's favor on her Article 1802 claims, we affirm on this issue.

### 3. Law 80

That leaves Delgado's Law 80 claim for wrongful discharge. Law 80 provides a remedy to employees who are discharged "without just cause." P.R. Laws Ann. tit. 29, § 185a; see also Pérez v. Horizon Lines, Inc., 804 F.3d 1, 9 (1st Cir. 2015). It employs the following burden-shifting framework (one different from that applied in the ADA context): (1) the employee must show that he or she has been discharged and allege that the dismissal was not justified; (2) the burden then shifts to the employer to show, by a preponderance of the evidence, that the dismissal was justified; and (3) if the employer shoulders that burden, the employee must rebut the showing of good cause. Pérez, 804 F.3d at 9. In this case, Delgado has met her initial burden; she has shown that she has been terminated and alleged in her complaint that her termination was not justified.

---

[24] Delgado also fails to address her Article 1802 claims in her reply brief or to respond to AstraZeneca's argument that those claims must fail because they are premised on the same conduct that forms the basis of her other claims.

Moving on to AstraZeneca's burden, Law 80 "specifies several grounds that are considered good cause for termination," id., including "[t]he employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee," P.R. Laws Ann. tit. 29, § 185b(c), as well as three other grounds "that relate to company restructuring or downsizing." Carrasquillo-Ortiz v. Am. Airlines, Inc., 812 F.3d 195, 196 (1st Cir. 2016); see also P.R. Laws Ann. tit. 29, § 185b(d)-(f). The statute also provides that "[a] discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment shall not be considered as a discharge for good cause." P.R. Laws Ann. tit. 29, § 185b.

In order to shoulder its burden of establishing just cause, AstraZeneca "need only demonstrate that it had a reasonable basis to believe that [Delgado] has engaged in one of those actions that the law identifies as establishing such cause." Pérez, 804 F.3d at 9. "A 'just' discharge," we have said, "is one where an employer provides a considered, non-arbitrary reason for an employee's termination that bears some relationship to the business' operation." Id. This inquiry focuses not on "the objective veracity of the employer's action" but instead "on the employer's reasonable belief"; even "a 'perceived violation

- 43 -

suffices to establish that [the employer] did not terminate [the employee] on a whim, but rather for a sensible business-related reason.'"  Id. at 10 (quoting Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 10 (1st Cir. 2007)).

For reasons we explained in our discussion of Delgado's retaliation claim, AstraZeneca has shouldered its burden here by offering two potential bases for a finding of a just-cause termination:  her failure to return to work after termination of her STD benefits and the elimination of her position.  Both of these reasons are considered, non-arbitrary, and bear some relationship to AstraZeneca's business operation.  See id. at 9. Therefore, "a reasonable jury could only conclude that [AstraZeneca] has met its burden of showing just cause."  Id. at 10.

Because AstraZeneca satisfied its burden, Delgado can defeat summary judgment only if she can rebut AstraZeneca's just-cause showing.  Id.  To shoulder her burden, Delgado "must do more than show that [AstraZeneca] may have gotten some of the particulars wrong.  Instead, [Delgado] had the burden to adduce probative evidence that [AstraZeneca] did not genuinely believe in or did not in fact terminate [Delgado] for the reason[s] given." Id. at 11.  To this end, Delgado offers several reasons why, she contends, AstraZeneca's reasons are pretextual.  See Collazo, 617 F.3d at 53 n.10 (vacating summary judgment on employee's Law 80

claims because genuine issue of material fact existed as to whether employee's "termination was the result of retaliatory animus, rather than company reorganization and inadequate performance").[25] But we've already considered (and rejected) each of these contentions in the course of affirming the entry of summary judgment on Delgado's retaliation claim. Thus, for the same reasons, we conclude that Delgado has failed to shoulder her burden to proceed to trial on her Law 80 claim.

## CONCLUSION

For these reasons, we affirm the district court's entry of summary judgment in AstraZeneca's favor. Each party shall bear its own costs.

---

[25] We note that, even where an employer terminates an employee for one of the three specified grounds relating to restructuring and downsizing, Law 80 imposes additional obligations on the employer. In particular, "the employer must give preference to those employees with greater seniority over those with less seniority within the same occupational classification." Carrasquillo-Ortiz, 812 F.3d at 196; see also P.R. Laws Ann. tit. 29, § 185c. "If the employer terminates a more senior employee and retains a less senior employee within the same occupational classification, the employer must pay the terminated employee a mesada." Carrasquillo-Ortiz, 812 F.3d at 196; see also P.R. Laws Ann. tit. 29, §§ 185a, 185c. We need not concern ourselves with the application of these provisions in this appeal, however, because Delgado's sole focus on appeal is demonstrating that neither of AstraZeneca's stated justifications are the true reason why it terminated her. Therefore, because she makes no argument that AstraZeneca still owes her a mesada even if it terminated her on the basis of company restructuring or downsizing, we need not consider this issue.