# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0302, <u>Barbara Reed v. New Hampshire Department of Health and Human Services</u>, the court on April 17, 2018, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiff, Barbara Reed (employee), appeals an order of the Superior Court (<u>Nicolosi</u>, J.), following a bench trial, in favor of the defendant, the New Hampshire Department of Health and Human Services (employer) on her claim for employment discrimination pursuant to RSA 354-A:7 (2009). She contends that the trial court erred by: (1) finding that she was not a "qualified individual" for purposes of RSA 354-A:7, VII, <u>see</u> <u>Board of Trustees of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 374 (2001) (holding that, unless state conduct violates 14th Amendment, 11th Amendment bars action under Americans with Disabilities Act (ADA) against state for damages); (2) not finding that she was subject to "disparate treatment"; and (3) finding that the employer engaged in good faith in an interactive process regarding her request for a reasonable accommodation.

In reviewing a trial court's decision rendered after a trial on the merits, we uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. <u>O'Malley v. Little</u>, 170 N.H. 272, 275 (2017). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. <u>Id</u>. Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. <u>Id</u>. Nevertheless, we review the trial court's application of the law to the facts <u>de</u> <u>novo</u>. <u>Id</u>.

We first address whether the trial court erred by finding that the employee was not a "qualified individual" because she would not be able to comply with the accommodation she requested. Under RSA 354-A:7, it is unlawful for an employer not to "make reasonable accommodations" for an employee who is "a qualified individual with a disability . . . unless such employer can demonstrate that the accommodation would impose an undue hardship" on the employer. RSA 357-A:7, VII. A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position." RSA 354-A:2, XIV-a (2009). This definition is comparable to that found in the ADA. <u>See</u> 42 U.S.C. § 12111(8) (2012); <u>Audette v. Town of</u>

Plymouth, MA, 858 F.3d 13, 20 (1st Cir. 2017). Accordingly, we look to federal law to aid in our analysis. Cf. State v. Ball, 124 N.H. 226, 232 (1983).

The employee has the burden to establish the existence of a reasonable accommodation. Echevarria v. AstraZeneca Pharmaceutical LP, 856 F.3d 119, 127 (1st Cir. 2017). To do so, she must show that she would be able to perform her essential job functions with the proposed accommodation. Id.

"The hallmark of a reasonable accommodation is effectiveness." Wright v. New York State Dept. of Corrections, 831 F.3d 64, 72 (2d Cir. 2016) (internal quotation omitted). "[T]he word 'accommodation' . . . conveys the need for effectiveness. An ineffective 'modification' or 'adjustment' will not accommodate a disabled individual's limitations." U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 400 (2002) (emphasis in original). "Determining the reasonableness of an accommodation is a 'fact-specific' question that often must be resolved by a factfinder." Wright, 831 F.3d at 72-73 (internal quotation and brackets omitted).

In this case, on February 3, 2010, after being allowed to arrive at work between 9:00 and 11:00 a.m. for approximately five years, the employee acknowledged that she had "not been able to keep the approved schedule" and had "fall[en] behind in assignments." She requested a new accommodation allowing her to work in the office from 1:00 p.m. to 6:00 p.m. and to work from home for 2.5 hours per day. She testified that she intended to work at home after 10:00 p.m. She attributed her need for this accommodation to her "reversed circadian rhythm disorder," which resulted "in having a different schedule of awake and sleep in which the most energy and focus might actually occur in the middle of the night."

The employer denied the request on March 19, 2010, because it concluded that the schedule would not allow the employee to perform her essential job functions. The employer noted that "historically, as recently as the last two pay periods," the employee had "not evidenced an ability to be in the workplace by the now requested time of 1:00."

The trial court found that allowing the employee to arrive at work daily at 1:00 would not be an effective accommodation because she neither "could [n]or would adhere" to the schedule. It further found that "no other reasonable accommodations could have been implemented that would have allowed [the employee] to accomplish the essential functions of her job."

The employee acknowledged to the trial court that "her regular and predictable attendance [was] an essential function of her job," see Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 33 (1st Cir. 2011) (stating that a majority of circuit courts recognize attendance as a job essential function), and testified that she was routinely not arriving at the office by 1:00.

2

The trial court reviewed her daily arrival times from January 28, 2009 to October 7, 2010, approximately 22 months. In particular, it focused upon the period between February 25 and March 25, 2010, reasoning that, while her request for the new accommodation was pending, she had a significant incentive to arrive at the time she proposed. However, the trial court found, and the record supports, that during the 20 workdays in this period, the employee arrived at work at or before 1:00 on only three days. She arrived at or after 3:00 on seven days and did not appear for work at all on four days. Her time records show that it was not uncommon for her to arrive at work at or after 4:00 p.m.

The employee argues that the trial court's finding that she could not reliably arrive at work by 1:00 was "based upon the Court's mistaken opinion that [her] medical providers were not fully aware of the requirements of her job and her history of tardiness." The employee identifies her primary care provider, Lynn Rossman, a physician's assistant, as providing "[t]he only professional medical opinion which addresses the question of whether [the employee] could meet her proposed arrival time of 1:00." However, Rossman testified that she had no knowledge of the employee's work attendance history. Rossman further testified that she understood that the employee had a "clerical position," but that she did not know the specifics of the employee's essential job functions.

Even if the trial court had accepted Rossman's opinion, she did not opine that a 1:00 p.m. start time was medically necessary or that the employee would be able to arrive at work at that time reliably. Rossman opined only that the employee's proposed schedule was "not unreasonable and should be given serious consideration" and that the employee needed "a flexible work schedule for maximum performance of her duties."

The employee argues that the trial court "failed to identify any competing evidence which supports its rejection of the uncontroverted medical evidence." However, the employee's time records rebutted any inference in Rossman's opinions that the employee could arrive at work reliably at 1:00. See Cook v. Sullivan, 149 N.H. 774, 780 (2003) (stating trial court is free to accept or reject, in whole or in part, whatever evidence was presented, including that of expert witnesses).

The employee argues that her proposed accommodation, coupled with certain anticipated treatments, would have enabled her to arrive at work at 1:00 reliably. Specifically, she points to a new pain medication, land and pool therapy, longer summer daylight hours, and returning to an individual office space. She also points to anticipated vitamin B-12 injections, despite her stipulation that vitamin B-12 had nothing to do with her claims. None of her anticipated treatments directly addressed her "reversed circadian rhythm disorder," which she had identified as the basis for her requested accommodation. Furthermore, pool therapy had been recommended as far back as August 2009, and extended daylight was merely seasonal.

The employee argues that receiving her requested accommodation would have reduced her stress and allowed her to get more sleep, thereby enabling her to arrive at work by 1:00 reliably. However, the trial court was not required to accept this assertion. See Cook, 149 N.H. at 780. The trial court could have reasonably determined that these anticipated changes would not alter her inability to arrive at work at 1:00 reliably. See O'Malley, 170 N.H. at 275 (stating we defer to trial court's judgment regarding weight given to evidence).

The employee argues that she should have been allowed a 30-day trial period of her proposed accommodation. However, she does not cite, nor are we aware of, any authority requiring an employer to grant such a "trial period" under RSA 354-A:7, VII. The trial court stated that a "trial period was just delaying the inevitable."

We conclude that the trial court's finding that the proposed accommodation would not have been effective and, thus, that the employee was not a "qualified individual" for the purposes of RSA 354-A:7, VII was supported by the evidence and not legally erroneous. See O'Malley, 170 N.H. at 275. In light of this conclusion, we need not address the employee's remaining arguments. See Lang v. Wal-Mart Stores East, L.P., 813 F.3d 447, 456 (1st Cir. 2016) (stating employer's failure to engage in interactive process was immaterial if employee was not qualified individual); Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 91 (1st Cir. 2012) (stating employee's disparate treatment claim failed because he did not establish he was qualified individual).

Affirmed.

Lynn, C.J., and Hicks, Bassett, and Hantz Marconi, JJ., concurred.


**Eileen Fox,
Clerk**

4